4 2 Atk. 516.

## Case No. 5,201.
### GALLEGO et al. v. UNITED STATES.
[1 Brock. 439.] 1
Circuit Court, D. Virginia. May Term, 1820.

---

1 [Reported by John W. Brockenbrough, Esq.]

MARSHALL, Circuit Judge. A complexion unfavourable to the appellants has been given to this case, by their refusing, or failing, when required, to exhibit to the district court, any testimony, whatever, establishing the extent of their interest in the cargo of the John and Adam. This conduct is well calculated to impress on the mind, a suspicion that their interest was, in truth, less than the moiety which they now claim. If, when at the time sentence of condemnation was pronounced, this inquiry was open for the district court, the judge had certainly a right to expect, and it was his duty to require, full satisfaction upon it. If that subject was closed, then no inquiry ought to have been instituted; and the sentence of condemnation ought to have extended to that part of the cargo only, which was not comprehended in the remission of forfeiture, made by the secretary of the treasury, in pursuance of the act of congress of the 2d of January, 1813,—2 Story, Laws, c. 149, p. 1283 [2 Stat. 789, c. 7],—the extent of which, in that view of the case, must be ascertained by the instrument itself. Upon examining the act of congress, I felt much doubt whether it applied to any case of a joint interest, between American citizens and British subjects. The case described by the act is, "goods, wares, and merchandise, owned by a citizen, or citizens of the United States"; not, "goods, &c. owned in whole, or in part

by a citizen." The act then speaks of the time of shipment, and adds—"and the person or persons, interested in such goods, &c., or concerned in the importation thereof, have incurred any fine, &c." "on such person or persons, petitioning for relief, &c." "in all such cases, wherein it shall be proved to his satisfaction, that said goods, wares, and merchandise, at the time of their shipment were, bona fide, owned by a citizen, or citizens of the United States, &c." the secretary of the treasury is directed to remit, &c. It might well be doubted, whether the power of the secretary of the treasury, is extended to any case where the specific articles are not wholly owned by citizens of the United States. But the language of the act is not free from ambiguity, and it refers to an act passed the 3d of March, 1797,—1 Story, Laws, c. 67, p. 458 [1 Stat. 506, c. 13],—which, in express terms, applies to any interest the petitioner may have. In construing the act, no reason can be perceived, for distinguishing between the interest of an American citizen, when joint and when sole; and it is an act intended for the protection of the citizen, which ought to be construed liberally, so as to effect that intention. In addition to these considerations, the act has already been construed by the district judges, I presume, from the proceedings in this case, and certainly by the treasury department, to embrace cases where American citizens are jointly concerned with British subjects. The construction put on the act by the department, entrusted with the power of remission, ought to be respected by the court. I shall, therefore, consider it as comprehending this case.

I am now to inquire, whether the secretary of the treasury has remitted any ascertained portion of the cargo of the John and Adam, or has remitted an undefined interest in that cargo, leaving it to the court to ascertain its extent. The act of 1813, directs the same proceedings on the petition of the party applying for relief, as are directed by the act of 1797. That act, directs the district judge, to inquire into the circumstances of the case, and to "cause the facts which shall appear on such inquiry, to be stated and annexed to the petition, and direct their transmission to the secretary of the treasury of the United States, who shall thereupon, have power to mitigate or remit," &c. By this act, the court is to put the secretary in possession of all the facts of the case, with the petition, before he exercises the power given him by congress. The act of 1813, enacts—"and on the facts being shown on inquiry had by such judge or court, stated and transmitted as by said act," (the act of 1797,) "is required; in all such cases, where it shall be proved to his satisfaction, &c."—"the secretary of the treasury is directed to remit all fines, penalties, and forfeitures, that may have been incurred." on certain conditions in the act expressed, and to direct the

prosecution to cease. The legislature seems to have intended, that the act of the treasury department, should be final and conclusive, and that all the facts should be placed before him, before he performs that act. Those articles, the forfeiture of which is remitted, are of course restored to the proprietor. The prosecutions, if instituted, are to cease. It would seem to be a part, and an essential part, of the duty of the secretary, to define the articles on which this remission operates; or if it be only on a certain interest on those articles, to define that interest. If the statement of facts made by the court, did not enable the secretary to ascertain this interest, it would seem to be his duty, to require a more full statement; and the case should go back to him for a final decision. It seems to be a part of his duty, not only to say, that the forfeitures shall be remitted, but to define, with precision, the objects on which this remission shall operate. If this view of the law be correct, it would seem to follow, that the remission granted by the secretary of the treasury, ought to be construed to dispose entirely of the subject, if it can fairly be so construed. Let the remission itself, with the papers to which it refers, be considered, for the purpose of determining, whether it ascertains its own extent, or refers that point to the court.

The petition states an application on the part of the petitioners, to John Gilliat, a merchant of London, to ship goods, some on the sole account of the petitioners, and some on joint account; and that, in consequence of this application, the cargo in question was purchased, which the petition avers to have been the sole property of Gilliat, and the petitioners. The statement, transmitted by the judge with this petition, asserts, "that the said goods, wares, and merchandise, at the time of their shipment at the port of London, in the kingdom of Great Britain, were the joint property of the said Joseph Gallego, John Richard, Michael Benedict Poiteaux, and John Gilliat." The secretary of the treasury, after reciting this petition and statement, says: "and whereas, it has been proved to my satisfaction," (How proved? Certainly by the statement. The instrument refers to no other testimony, nor does the law authorize him to receive any other.) "that part of the goods, &c., were, bona fide, owned by citizens of the United States, &c.:" "Now, therefore, know ye, that I, &c., do hereby remit to the petitioners aforesaid, all the fines, &c., incurred as aforesaid, on their several shares thereof, or interest therein, upon the costs and charges," &c., being paid. "And do, also, direct the prosecution, or prosecutions, if any shall have been instituted for the recovery thereof, to cease on payment of the costs," &c.

There is nothing in the statement of facts, which shows any right in the petitioners, to any separate part of the cargo. The words,

therefore, "their several shares thereof, or interest therein," must refer to their individed shares or interests, not to any distinct property, they might possibly hold in severalty. The remission is to take place, not on their ascertainment of their interest or shares, but on their paying charges and duties; and the prosecutions are to be discontinued, not on their proving to the court, the extent of their interest, but on paying the costs. These circumstances, as well as the view I have taken of the duty of the treasury department, lead to the opinion, that the secretary considered the extent of the interest of the petitioners, as already established, and did not mean to institute a new inquiry into that subject. It was considered as established in the statement submitted to him by the court, which represents them to have been jointly concerned with Gilliat. Suppose the law to have required, that the prosecution should have been instituted in one court, and the petition and statement to have passed through another. Could the court in which the prosecutions were depending, have proceeded to an investigation of the extent of the interest of the petitioners. after receiving this instrument of dismission from the treasury department? I believe it could not, if by any construction, the statement of the district court, and the act of remission. could be understood to define the extent of the remission. The whole subject passes, it is true, through the same court; but that court is to exercise different powers, in different stages of the proceeding, All which relates to the property, is to be completed before the statement is submitted to the secretary of the treasury. The secretary acts on that statement, and his acts cannot be revised by the court. Sentence reversed as to a moiety.